UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

REMESH, INC.

                                  Plaintiff,

        -v-

KANTAR LLC, et al.,

                                  Defendants.

CIVIL ACTION NO. 25 Civ. 7700 (GHW) (SLC)

**OPINION & ORDER**

**SARAH L. CAVE,** United States Magistrate Judge.

## I. INTRODUCTION

Plaintiff Remesh, Inc. ("Remesh") sues Defendants Kantar LLC ("KLLC"), Kantar Group Limited ("KGL"), and Kantar China[1] ("Kantar China," together, "Defendants") for misappropriation of Remesh's trade secrets and related claims.  (Dkt. No. 46 (the "Amended Complaint")).  On January 12, 2026, KLLC and KGL moved to dismiss the Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) (Dkt. Nos. 48–49; 51 (the "First MTD")), and on March 23, 2026, Kantar China moved to dismiss for failure to state a claim and for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).  (Dkt. Nos. 52–54 (the "Second MTD")).[2]  In support of the Second MTD, Kantar China submitted the declaration of the Chairman of its Board, Gao Yu Xian ("Mr. Gao").  (Dkt. No. 54 (the "Declaration")).

Before opposing the Second MTD, Remesh seeks (i) leave to conduct jurisdictional discovery in connection with the Second MTD, and (ii) an extension of the deadline to oppose

---

[1] Kantar China's corporate name is Kantar China Limited.  (Dkt. Nos. 53 at 8 n.1; 55).
[2] The Honorable Gregory H. Woods has referred the First MTD and the Second MTD for a report and recommendation.  (Dkt. No. 16).

1

the Second MTD.  (Dkt. Nos. 58; 61 (the "Discovery Motion")).  In the Discovery Motion, Remesh seeks to: (i) compel responses from Kantar China as to eight requests for production (the "RFPs") and eight interrogatories (the "Interrogatories"); (ii) compel Kantar China, KGL, and KLLC to produce corporate representatives for depositions pursuant to Federal Rule of Civil Procedure 30(b)(6) (the "Rule 30(b)(6) Depositions"); and (iii) compel Mr. Gao's deposition.  (Dkt. Nos. 58; 58-2; 58-3; 58-4; 61; 63; minute entry dated Apr. 20, 2026).  On April 20, 2026, the Court held a conference (the "Conference") to discuss the Discovery Motion.  (Dkt. Nos. 59; 63; minute entry dated Apr. 20, 2026).  For the reasons set forth below, the Discovery Motion is **GRANTED IN PART** and **DENIED IN PART**.

### II.BACKGROUND

A.  **Factual Background**[3]

1.  **The NDA**

On July 1, 2016, Remesh and "Firefly Millward Brown [FMB], a Division o[f] Millward Brown LLC," also known as "Kantar[,]" entered into a Non-Disclosure Agreement.  (Dkt. No. 46-9 at 2 (the "NDA")).  The NDA defines "Kantar" to mean "any person, firm or company, being a subsidiary of WPP plc which trades as a member of the 'Kantar Group'."  (Id. at 3).  Remesh alleges that the NDA's definition of "Kantar" means that all Defendants, including Kantar China, "are bound to the NDA."  (Dkt. No. 46 ¶ 30).

---

[3] The following facts are taken from the Amended Complaint (Dkt. No. 46), the Second MTD (Dkt. Nos. 52–54), the Declaration (Dkt. No. 54), the Discovery Motion (Dkt. Nos. 58; 61), Kantar China's response to the Discovery Motion (Dkt. No. 60), and Kantar China's Rule 7.1 corporate disclosure statement (Dkt. No. 55), and do not constitute findings of fact.

Pursuant to the NDA, Kantar and Remesh agreed to disclose to each other "certain Confidential Information [] concerning [themselves] and other members of the Kantar Group and/or their clients" only for the purposes of "executing various client projects as well as jointly discussing" the "Project[,]" which was defined as "a custom agile solution."  (Dkt. No. 46-9 at 2).

In the NDA, which is governed by New York law, Remesh and Kantar "agree[d] to sole venue in the state or federal courts located in New York" and "consent[ed] to the jurisdiction of such courts . . . in any action relating to" the NDA.  (Id. at 7 ¶ 12.10 (the "NDA FSC")).

### 2.  The TOS

On September 30, 2021, Remesh and Kantar China entered into a Pilot Terms of Service Channel Agreement (the "TOS"), pursuant to which Remesh granted Kantar China, for a payment of $6,600.00, "a non-exclusive, non-transferable, non-sublicensable [with certain exceptions], right and license, during the pilot term . . . to access and use the SaaS Software in accordance with the terms of the" TOS.  (Dkt. No. 46-10 at 2 ¶ 1.1; id. at 5).  Pursuant to the TOS, Remesh and Kantar China agreed to maintain the confidentiality of confidential information disclosed under the TOS.  (Id. at 3 ¶ 7.1).  In particular, Kantar China agreed to maintain the confidentiality of the "Remesh Property, defined to include, inter alia, "any technical information, solution content, techniques, ideas, methods, processes, software, interfaces, utilities, data, data templates or files, dashboard, question formats and pairings, databases or libraries of sample questions and screeners, documents, directories, designs, know-how, intellectual property, information or materials of any kind" that Remesh "acquired, created, developed or licensed . . . outside the scope of" the TOS.  (Id. at 4 ¶ 9).  The TOS provided that it would be governed by New York law but did not contain a forum selection clause.  (Id. at 3 ¶ 8.1).

3

### 3.  The MSA

On December 1, 2023, KLLC and Remesh entered into a Master Agreement for Suppliers. (Dkt. No. 46-11 (the "MSA")).  In the MSA, KLLC — the "Customer" — and Remesh — the "Supplier" — agreed to keep confidential information they shared with each other under the MSA relating to each other's:

> business affairs, marketing information, technical information, distribution information, business methods, questionnaires, software, algorithms, data, user interfaces, methodologies, plans and efforts, courses of dealings or contracts with customers and vendors, directors, officers and employees, budgets, prices, order book, accounts, finances, parent and subsidiary companies, and any other information which is commercially sensitive, and any other information that would appear to a reasonable person to be confidential or proprietary from the nature of the information or circumstances in which it was disclosed or obtained. Customer Materials and Customer software are the confidential information of the Customer and Supplier Property is the confidential information of [] Supplier.

(Dkt. No. 46-11 at 2 ¶ 1.1; see id. at 9 ¶ 13 (entitled "Confidentiality")).

The MSA is governed by New York law and provides that "[a]ll claims or disputes arising out of or in connection with [the MSA] shall be heard exclusively by any of the federal or state court(s) of competent jurisdiction located in the Borough of Manhattan, New York City, NY, USA. To that end, each Party irrevocably consents to the exclusive jurisdiction of, and venue in, such court(s), and waives any objection it may have to any proceedings brought in any such court." (Dkt. No. 46-11 at 12 ¶ 20.9 (the "MSA FSC")).

### 4.  Kantar China

Kantar China is a direct subsidiary of Kantar Hong Kong Limited and an indirect subsidiary of Bain Capital Europe Fund V, SCSp.  (Dkt. No. 55).  WPP plc owns 10% or more of Kantar China's stock.  (Id.)  According to Mr. Gao, Kantar China is incorporated in China, where it maintains its sole place of business.  (Dkt. No. 54 ¶ 4).  Kantar China conducts business from within China,

4

where it maintains its offices, records, personnel, and business operations. (Id. ¶ 30). Kantar China does not file any tax returns or pay sales tax in the United States and does not have in the United States: (i) a parent or subsidiary; (ii) an office, branch, facility, or place of business; (iii) real or personal property; (iv) officers, directors, or employees; (v) bank accounts; or (vi) registration to do business or agent for service of process. (Id. ¶¶ 4–15). Kantar China does not solicit business or market its services in the United States, nor does it target advertising, attend trade shows or promotional events, or engage in online advertising or digital marketing directed at the United States. (Id. ¶¶ 16–20).

Kantar China personnel who conduct contractual negotiations do so from within China, and Kantar China did not authorize FMB, KLLC, or any other entity to enter into contracts on its behalf or waive personal jurisdiction or venue. (Dkt. No. 54 ¶¶ 21–23). Kantar China "is not a signatory to, and has never been a party to" the NDA or the MSA. (Id. ¶ 28).

Kantar China developed Kantar ART for its own use "without involvement from or interaction with any other Kantar entity." (Dkt. No. 54 ¶ 24). Kantar China's only agreement or interaction with Remesh was the TOS, for which Kantar China made a net payment to Remesh of $5,940.00. (Id. ¶ 26). Kantar China's representatives who negotiated the TOS with Remesh "have never been physically present in the United States," and its personnel who engaged in conduct "relevant to Remesh's claims" were in China, not the United States. (Id. ¶¶ 27, 29, 31). The documents and electronically stored information relevant to Remesh's claims are maintained in China. (Id. ¶ 32).

### 5. Remesh's Claims

This action involves Remesh's claims for trade secret misappropriation, breach of contract, and copyright infringement, for which Remesh seeks damages and a declaratory judgment, arising from Defendants' alleged copying of Remesh's proprietary software as a service platform (the "SaaS Software"). (Dkt. No. 46 ¶¶ 5, 7–8, 76–120). Remesh alleges that, in 2016, Defendants received access to the "original version" of the SaaS Software pursuant to the NDA. (Id. ¶ 7). In 2019, again pursuant to the NDA, Defendants received access to a "second version" of the SaaS Software, to which Defendants "continue to have access to under various pilot agreements and [the MSA] between Remesh and KLLC. (Id.) Remesh alleges that, after obtaining access to the SaaS Software, Defendants developed, marketed, and sold "copycat product[s]" — Kantar Live, Kantar ART, and Kantar ART AI (the "Accused Products") — based on the SaaS Software, in breach of federal intellectual property law and Defendants' contractual obligations to Remesh. (Id. ¶¶ 8, 12).

### III. DISCUSSION

## A. Legal Standards

### 1. Personal Jurisdiction

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, [the] [p]laintiff has the burden of demonstrating personal jurisdiction." RV Skincare Brands LLC v. Digby Invs. Ltd., 394 F. Supp. 3d 376, 380 (S.D.N.Y. 2019) (citing Troma Ent., Inc. v. Centennial Pictures Inc., 729 F.3d 215, 217 (2d Cir. 2013)).[4] When a defendant challenges personal jurisdiction on the pleadings and before discovery, "'the plaintiff need show only a prima facie case.'" King Cnty.,

---

[4] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

Wash. v. IKB Deutsche Industriebank, AG, 769 F. Supp. 2d 309, 313 (S.D.N.Y. 2011) (quoting

Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp., 751 F.2d 117, 120 (2d Cir. 1984)).  "A

plaintiff must carry [t]his burden with respect to each defendant individually."    Berdeaux v.

OneCoin Ltd., 561 F. Supp. 3d 379, 396 (S.D.N.Y. 2021).    "[C]onclusory non-fact-specific

jurisdictional allegations," however, or a "legal conclusion couched as a factual allegation" will

not establish a prima facie showing of jurisdiction.  See Jazini v. Nissan Motor Co., Ltd., 148 F.3d

181, 185 (2d Cir. 1998); King Cnty., 769 F. Supp. 2d at 313.

        "Personal jurisdiction may be either general or specific."  Al-Ahmed v. Twitter, Inc., 553 F.

Supp. 3d 118, 124 (S.D.N.Y. 2021) (citing Brown v. Lockheed Martin Corp., 814 F.3d 619, 624 (2d

Cir. 2016)).  "General, or 'all-purpose,' jurisdiction allows a court to adjudicate any cause of action

against the defendant, regardless of where it arose."    Al-Ahmed, 553 F. Supp. 3d at 124–25.

Specific jurisdiction is limited to causes of action that "arise[] out of the defendant's activities in

a state."    Id. at 125; see also Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S.

408, 414 n.8 (1984).

        Federal courts employ "[a] two-step analysis" to determine whether the court may

exercise personal jurisdiction over a non-domiciliary defendant.  RV Skincare Brands, 394 F. Supp.

3d at 380 (quoting Eades v. Kennedy, PC L. Offs., 799 F.3d 161, 168 (2d Cir. 2015)).  "The first step

is to determine whether a defendant's actions come within the reach of" the law of the state in

which the Court sits, here, "New York State's long-arm statute, N.Y. C.P.L.R. § 302(a)."  RV

Skincare Brands, 394 F. Supp. 3d at 380–81 (citing Sunward Elecs., Inc. v. McDonald, 362 F.3d

17, 22 (2d Cir. 2004)); see Chloé v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 163–64 (2d Cir.

2010) (looking first to long-arm statute of New York, "the forum state"); accord Al-Ahmed,

7

553 F. Supp. 3d at 124.  If state law requirements are met, "the second step is to determine whether exercising personal jurisdiction comports with the Due Process Clause."  RV Skincare Brands, 394 F. Supp. 3d at 381.  "[D]ue process requires . . . that in order to subject a defendant to judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement, 326 U.S. 310, 316 (1945).

Under New York's long-arm statute, a court may exercise personal jurisdiction over a non-domiciliary who, in person or through an agent: (1) "transacts any business within the state or contracts anywhere to supply goods or services in the state"; (2) "commits a tortious act within the state"; (3) "commits a tortious act without the state causing injury to person or property within the state . . . if he [or she] (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce"; or (4) "owns, uses or possesses any real property situated within the state."  N.Y. C.P.L.R. § 302(a).

Under § 302(a)(1), a non-domiciliary is subject to specific personal jurisdiction in New York if he or she "transacts any business within the state or contracts anywhere to supply goods or services in the state."  N.Y. C.P.L.R. § 302(a)(1).  For the Court to exercise personal jurisdiction under this provision, "the defendant must have transacted business within the state, and the claim asserted must arise from that business activity."  Aero AG Holdings, LLC v. Huggoes Fashion

LLC, No. 21 Civ. 9499 (VEC) (SLC), 2022 WL 4463896, at *4 (S.D.N.Y. Sept. 26, 2022) (citation modified) (quoting Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161, 168 (2d Cir. 2013)).  "The sufficiency of a defendant's contact with the forum is measured by 'the totality of the defendant's activities within the forum.'"  RV Skincare Brands, 394 F. Supp. 3d at 381 (quoting Best Van Lines, Inc. v. Walker, 490 F.3d 239, 246 (2d Cir. 2007)).  "A showing that a party is transacting business requires only a minimal quantity of activity, provided that it is of the right nature and quality."  Chanel, Inc. v. Doubinine, No. 04 Civ. 4099 (CPS), 2008 WL 4449631, at *2 (E.D.N.Y. Oct. 2, 2008) (citing Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 28 (2d Cir. 1996)).

"Notably, Section 302(a)(1) is a single-act statute," i.e., "proof of one purposeful transaction in New York is sufficient to trigger Section 302(a)(1), as long as there is a 'substantial relationship between the transaction and the claim asserted.'"  RV Skincare Brands, 394 F. Supp. 3d at 381 (quoting Chloé, 616 F.3d at 170) (collecting cases); see JDM Import Co. Inc. v. Shree Ramkrishna Exps. Pvt., Ltd., No. 20 Civ. 8759 (VEC), 2021 WL 5450237, at *4 ("'Section 302(a)(1) is a single act statute, which means that proof of one transaction in New York is sufficient to invoke jurisdiction.'") (quoting High St. Cap. Partners, LLC v. ICC Holdings, LLC, No. 18 Civ. 652592 (JMC), 2019 WL 2106093, at *2 (N.Y. Sup. Ct. May 14, 2019); see Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs., 7 N.Y.3d 65, 71 (2006) (explaining that "proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted").

In addition, "[p]arties may consent to personal jurisdiction by executing an enforceable forum-selection clause." HSM Holdings, LLC v. Mantu I.M. Mobile Ltd., No. 20 Civ. 967 (LJL), 2021 WL 918556, at *6 (S.D.N.Y. Mar. 10, 2021) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 n.14 (1985)); see D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 103 (2d Cir. 2006) ("Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements."). "Where an agreement contains a valid and enforceable forum selection clause . . . it is not necessary to analyze jurisdiction under New York's long-arm statute or federal constitutional requirements of due process" as to the parties bound by that agreement. Exp.-Imp. Bank of U.S. v. Hi-Films S.A. de C.V., No. 09 Civ. 3573 (PGG), 2010 WL 3743826, at *4 (S.D.N.Y. Sept. 24, 2010). Consenting to "[a]n enforceable forum selection clause amounts to consent to personal jurisdiction." Farrell Lines Inc. v. Columbus Cello-Poly Corp., 32 F. Supp. 2d 118, 127 (S.D.N.Y. 1997).

### 2. Jurisdictional Discovery

To warrant jurisdictional discovery, a plaintiff need not necessarily make a prima facie showing of personal jurisdiction, only that it has "made a sufficient start toward establishing personal jurisdiction." City of Almaty v. Ablyazov, 278 F. Supp. 3d 776, 809 (S.D.N.Y. 2017); see Ehrenfeld v. Mahfouz, 489 F.3d 542, 550 n.6 (2d Cir. 2007) (explaining that it would be "legal error" for a district court to "forbid[] jurisdictional discovery any time a plaintiff does not make a prima facie showing of jurisdiction"). A "sufficient start" means "identif[ying] a genuine issue of jurisdictional fact[.]" Daventree Ltd. v. Republic of Azerbaijan, 349 F. Supp. 2d 736, 761 (S.D.N.Y. 2004). The district court has "considerable" discretion in determining what, if any, jurisdictional discovery to permit. APWU v. Potter, 343 F.3d 619, 627 (2d Cir. 2003).

B. **Application**

1. **Request to Conduct Jurisdictional Discovery**

Remesh has made a "sufficient start toward establishing" a basis for personal jurisdiction over Kantar China to warrant permitting jurisdictional discovery. City of Almaty, 278 F. Supp 3d at 809. In the Amended Complaint, Remesh alleges five bases for personal jurisdiction over Kantar China: (1) "it engages in systematic and continuous business activities in this district by developing software products and services with the expectation that they will be purchased, offered for sale, and used by residents of New York, including [KLLC];" (2) "it engages in continuing relationships and obligations with residents of New York, including [KLLC];" (3) "it developed the [Accused Products] with the expectation that those products will be sold or offered for sale within New York;" (4) it breached the TOS, which is governed by New York law; and (5) it consented to personal jurisdiction in this Court through FMB's "entering into the NDA on behalf of all members of the 'Kantar Group.'" (Dkt. No. 46 ¶ 13).

Of these five bases, the first, third, and fifth bases above warrant further factual development before Kantar China's jurisdictional arguments in the Second MTD can be resolved.[5] As to the first and third bases, Remesh alleges that Kantar China developed the Accused Products with the expectation or understanding that KLLC, which is headquartered in

---

[5] As to the second basis, we are skeptical that Kantar China's relationship to KLLC alone would be a sufficient basis on which to exercise personal jurisdiction over Remesh's claims. See M. Shanken Commc'ns, Inc. v. Variant Events, LLC, No. 10 Civ. 4747 (CM), 2010 WL 4159476, at *8–9 (S.D.N.Y. Oct. 7, 2010) (denying request for jurisdictional discovery where plaintiff only alleged that foreign defendant did or solicited business in district). As to the fourth basis, the TOS, we note that while a New York choice-of-law provision "is a factor weighing towards specific personal jurisdiction, it is not enough on its own to show that [a] [d]efendant[] purposely availed [itself] of the privilege of conducting activities within New York." Everything Yogurt Brands, LLC v. Bianco, No. 23 Civ. 1161 (LJL), 2024 WL 3497757, at *6 (S.D.N.Y. July 22, 2024) (collecting cases). Accordingly, we do not authorize jurisdictional discovery as to the second or fourth bases.

New York, would sell them in New York. (Dkt. No. 46 ¶¶ 11, 13). A sophisticated foreign domiciliary like Kantar China who engages in even one sale transaction with a New York-based party may be deemed to have "avail[ed] itself of the benefits of conducting business here, and thus had sufficient contacts with New York to authorize [the] exercise [of] jurisdiction over its person." Deutsche Bank Sec., 7 N.Y.3d at 71–72; see N.Y. C.P.L.R. § 302(a)(1). As Remesh notes, Kantar's own press release indicates that one of the Accused Products was developed by "Kantar's expert team in China[,]" which we reasonably read to refer to Kantar China. (Dkt. Nos. 46 ¶ 49; 46-12). Ascertaining which personnel developed the Accused Products, where those personnel were located, for whom they worked, and how the Accused Products came to be sold into New York, among other questions, will be important to assessing whether Remesh has plausibly alleged this theory of personal jurisdiction over Kantar China. See Wilson & Wilson Holdings LLC v. DTH, LLC, 673 F. Supp. 3d 409, 414 (S.D.N.Y. 2023) (permitting limited jurisdictional discovery where there was "at least some evidence" that foreign defendant "engaged in a continuous and systematic course of doing business in New York"); Kiobel v. Royal Dutch Petroleum Co., No. 02 Civ. 7618 (KMW) (HBP), 2009 WL 3817590, at *5–6 (S.D.N.Y. Nov. 16, 2009) (permitting limited jurisdictional discovery regarding whether domestic sales of oil could be attributed to foreign defendant for jurisdictional purposes).

As to the fifth basis, Remesh's theory appears to be that Kantar China, which is partially owned by WPP plc, is included in the definition of "Kantar" in the NDA and is therefore bound by the NDA FSC. (Dkt. Nos. 46 ¶¶ 13, 30; 55; 58 at 2; see Dkt. No. 46-9 at 2–3). Kantar China disputes that it is a party to the NDA and points to Mr. Gao's Declaration as "establish[ing] that [FMB and KLLC] were not authorized to enter into contracts on [its] behalf." (Dkt. No. 60 at 1–2). In the

12

alternative, Kantar China argues that even if the NDA FSC is binding, "due process would not be satisfied." (Id. at 2). At this stage, however, Remesh has alleged at least a colorable theory why Kantar China is bound by the NDA FSC, and Mr. Gao's Declaration simply raises factual questions about Kantar China's knowledge of the NDA and the extent — or lack thereof — of FMB's ability to bind Kantar China. See Leon v. Shmukler, 992 F. Supp. 2d 179, 195 (E.D.N.Y. 2014) (permitting jurisdictional discovery where plaintiff's theories of personal jurisdiction were "colorable" as to justify "limited discovery as to the jurisdictional questions."); see also Valent Biosciences LLC v. Maersk A/S, No. 25 Civ. 1679 (DEH), 2026 WL 351140, at *2 (S.D.N.Y. Feb. 9, 2026) (finding that it was "entirely foreseeable that Maersk Logistics would be subjected to the forum selection clause present in its wholly-owned affiliates' Bills of Lading.").

Ultimately, even with jurisdictional discovery, Remesh may not be able to substantiate a prima facie case for personal jurisdiction over Kantar China. At this stage, however, Remesh has made a threshold, non-frivolous assertion of personal jurisdiction sufficient for the Court to exercise its discretion to permit limited jurisdictional discovery as set forth below.

### 2. Scope of Jurisdictional Discovery

Although Remesh has made a threshold showing warranting some jurisdictional discovery, Remesh's requests — consisting of eight RFPs, eight Interrogatories, and four depositions — are hardly "limited." (Dkt. Nos. 58; 58-2; 58-3; 58-4). On the other hand, the discovery that Kantar China offered to provide — a response to Interrogatory No. 3 only — is far too narrow to address the factual questions noted above. (Dkt. No. 60 at 3). We find that responses from Kantar China as to RFP Nos. 4 and 7, and Mr. Gao's deposition will be sufficient for that purpose, and decline to require any further jurisdictional discovery at this time. See

Tutor Perini Building Corp. v. N.Y.C. Regional Ctr., LLC, No. 20 Civ. 731 (PAE), 2020 WL 7711629, at *2 (S.D.N.Y. Dec. 29, 2020) (holding that "between the polar outcomes urged by the parties, a middle ground — granting limited jurisdictional discovery to confirm or disprove the existence of complete diversity — [was] warranted.").

To determine the scope of jurisdictional discovery, "the Court is mindful of the need for relevance and proportionality; that is, the discovery permitted must be relevant and proportional to the needs of the case." Wilson & Wilson Holdings LLC, 673 F. Supp. 3d at 414; see Blockchain Mining Supply & Servs. Ltd. v. Super Crypto Mining, Inc., No. 18 Civ. 11099 (ALC), 2020 WL 7128968, at *2 (S.D.N.Y. Dec. 4, 2020) (limiting jurisdictional discovery "only to verify the allegations of specific facts crucial" to plaintiff's threshold jurisdictional theory); Carl v. Edwards, No. 16 Civ. 3863 (ADS) (AKT), 2017 WL 4271443, at *9 (E.D.N.Y. Sept. 25, 2017) (recognizing "duty to ensure, in accordance with Rule 26(b)(1) that the discovery sought by Plaintiff — even in the limited jurisdictional context — is both relevant and proportional in light of the facts and circumstances of th[e] case.").

As to the first and third bases of personal jurisdiction — Kantar China's role in developing the Accused Products for KLLC to sell in or from New York (Dkt. No. 46 ¶¶ 11, 13) — only RFP No. 4.[6] is sufficiently focused on Kantar China's involvement with the Accused Products. As

---

[6] RFP No. 4 requests: "All DOCUMENTS and COMMUNICATIONS CONCERNING any interactions, agreements, discussions, negotiations, or coordination between or among KANTAR CHINA and any RELATED ENTITY or AFFILIATE CONCERNING the distribution, advertising, marketing, product strategy, branding, customer targeting, pricing, sales campaigns, promotion, licensing, demonstration, offering for sale, sale, and other commercialization of any ACCUSED PRODUCT in the United States, including, but not limited to, any licensing arrangements, contracts, or agreements between KANTAR CHINA and any RELATED ENTITY or AFFILIATE CONCERNING the ACCUSED PRODUCTS, and any revenue-sharing arrangements, contracts, or agreements between KANTAR CHINA and any RELATED ENTITY or AFFILIATE CONCERNING the ACCUSED PRODUCTS." (Dkt. No. 58-2 at 9).

drafted, however, RFP No. 4 remains overly broad, seeking information about Kantar China's interactions and agreements with other Kantar entities in the United States, when its interactions with KLLC, as the only New York-based entity, are the only contacts that matter for personal jurisdiction purposes.  (See Dkt. No. 63 at 15–16).  Accordingly, Kantar China shall respond to RFP No. 4, revised as follows:

> All DOCUMENTS and COMMUNICATIONS CONCERNING any interactions, agreements, negotiations, or coordination between or among KANTAR CHINA and KLLC CONCERNING the distribution, advertising, marketing, product strategy, branding, customer targeting, pricing, sales campaigns, promotion, licensing, demonstration, offering for sale, sale, and other commercialization of any ACCUSED PRODUCT in New York, including, but not limited to, any licensing arrangements, contracts, or agreements between KANTAR CHINA and KLLC CONCERNING the ACCUSED PRODUCTS, and any revenue-sharing arrangements, contracts, or agreements between KANTAR CHINA and KLLC CONCERNING the ACCUSED PRODUCTS.[7]

As to the fifth basis, only RFP No. 7 seeks information concerning Kantar China's knowledge and awareness of the NDA, which contains the NDA FSC.  (Dkt. No. 58-2 at 10).[8]  RFP No. 7, as drafted, is also exceedingly broad and disproportional to the need to address the narrow jurisdictional question.  Accordingly, Kantar China shall respond to RFP No. 7, revised as follows:

> All DOCUMENTS and COMMUNICATIONS CONCERNING KANTAR CHINA'S knowledge or awareness of the NDA, including, but not limited to, any DOCUMENTS and COMMUNICATIONS CONCERNING when and how KANTAR CHINA became aware of the NDA, which individuals, if any, at KANTAR CHINA were made aware of the NDA or its terms, and any COMMUNICATIONS with KANTAR

---

[7] During the Conference, Kantar China's counsel described "an agreement or protocol . . . that establishes that one entity can use the other entity's IP if they're within the Kantar corporate umbrella."  (Dkt. No. 63 at 21:3–6).  Such a document would be responsive to RFP No. 4 as revised.

[8] RFP No. 7 requests: "All DOCUMENTS and COMMUNICATIONS CONCERNING KANTAR CHINA'S knowledge or awareness of the NDA, including, but not limited to, any DOCUMENTS and COMMUNICATIONS CONCERNING when and how KANTAR CHINA became aware of the NDA, the identity of any individuals at KANTAR CHINA who were made aware of the NDA or its terms, and any COMMUNICATIONS with KANTAR CHINA or between KANTAR CHINA and any other PERSON discussing, referencing, or addressing the NDA or the obligations arising thereunder."  (Dkt. No. 58-2 at 10).

CHINA or between KANTAR CHINA and FMB, KLLC, KGL, or WPP plc discussing, referencing, or addressing the NDA or the obligations arising thereunder.[9]

As to the Interrogatories, the Court finds them to be overly broad and a less efficient means of elucidating meaningful information concerning the jurisdictional questions described above.  See CG3 Media, LLC v. Belleau Techs., LLC, No. 21 Civ. 4607 (MKV), 2022 WL 1172499, at *1–2 (S.D.N.Y. Apr. 20, 2022) (declining to require responses to interrogatories that would have involved "potentially long narrative explanations that would be more practically discoverable through deposition testimony.") (citation modified); Rivers v. Safesite Nat'l Bus. Records Mgmt. Corp., No. 94 Civ. 5323 (JSM), 1995 WL 510034, at *1 (S.D.N.Y. Aug. 28, 1995) (declining to compel responses to interrogatories that sought information concerning "matters normally addressed by deposition").

Finally, as to the Rule 30(b)(6) Depositions, the Rule 30(b)(6) topics posed to Kantar China, KGL, and KLLC are, like the Interrogatories, far broader than is necessary to address Remesh's colorable jurisdictional theories.  (See § III.B, supra).  Instead, a remote (i.e., video) deposition of Mr. Gao, limited to his statements in the Declaration and to a period of not more than four hours of on-the-record time, balances Remesh's need for jurisdictional discovery against the burdens on Kantar China.  See Wilson & Wilson Holdings LLC, 673 F. Supp. 3d at 415 (limiting deposition of witness who submitted declaration concerning jurisdictional facts to four hours).

---

[9] Kantar China's counsel having agreed to "try" to "make [] available" an organizational chart showing the relationship between the Kantar entities (the "Chart"), the Court also encourages Kantar China to conduct a reasonable search for and production of such a Chart.  (Dkt. No. 63 at 17–18).

### IV.CONCLUSION

For the reasons set forth above, Remesh's Discovery Motion is **GRANTED IN PART** to the extent that (i) Kantar China shall respond to RFP Nos. 4 and 7, (ii) produce the Chart (see n.9, supra), and (iiI) make Mr. Gao available for a remote deposition of no longer than four hours of on-the-record time and limited to his statements in the Declaration (together, the "Limited Jurisdictional Discovery"); and **DENIED** in all other respects.  By **May 29, 2026**, the parties shall file a joint letter updating the Court on the status of Limited Jurisdictional Discovery.  In the meantime, Remesh's deadline to respond to the Second MTD shall remain **EXTENDED** sine die.

Dated:        New York, New York
              April 30, 2026

                                        SO ORDERED.


                                        _____
                                        SARAH L. CAVE
                                        United States Magistrate Judge